I will dispense with the call of the calendar, because the clerk informs us that virtually all of the assigned counsel are here. Has Mr. Sanchez appeared? He has not appeared in the second case. Well, when we get to it, we'll deal with it. We'll turn first to USA v. Desmond Campbell. Thank you, Your Honors. May it please the Court. This is a single issue, and Mr. Campbell wishes to raise to this Court his contention that his motion to withdraw his guilty plea should have been granted. Now, I stand here and say he has a heavy burden on this, particularly in view of his flight that occurred here and the possible prejudice to which the government notes if he were to be retried at this point. What I will argue on his behalf are among the things that he contends entitled him to a reversal and withdrawal of his guilty plea. One is that he contends that it was error for the district court not to inform him during his plea that he was entitled to the appointment of assigned counsel at the stage at which he had retained counsel at that time. The judge said, you may go to trial with your retained counsel, but did not say. Now, he alleges certain things in his motion that pertain to this issue about assignment of counsel, and that is he alleged that his retained attorney said to him, you have to pay me more money if we're going to trial, otherwise you've got to plead guilty. He alleged that he was promised probation, and he said that he was told he had to say yes during the plea proceedings. These things, of course, I can't argue at this point. That is true. They are allegations at this point of him. What I do say is that they met the threshold of the requirement of an evidentiary hearing on the issue. You get an evidentiary hearing unless what's raised is inherently incredible, it contradicts the record, or it's merely conclusory. I submit that these allegations met that threshold if they were determined to be true. Only an evidentiary hearing would have been able to determine that. Then they were plausible, and they would be plausible as affecting the voluntariness of his plea. The second point that I simply wish to raise is where the court, during the plea, said that he must be sentenced to the 10-year mandatory minimum. In this case, he was still subject to the possibility of safety valve relief if he was going to be truthful with the government. Now, as the government has alleged in its brief and said, that he already went through a proper session. They determined he had not been truthful, but that he had an offer to again come to the government, and assuming, presumably, if he was truthful, he would have had safety valve relief, and the possibility of a sentence of under 10 years. He says, yes, I understand that I must be sentenced to a 10-year mandatory minimum. I submit that answer indicates, particularly in light of this is an illiterate man, fourth grade education indicates a lack of understanding, and therefore affecting the voluntariness. The district court found that, disputed the effect of the errors that you have just recited or alleged, and pointed also to the fugitive disentitlement doctrine as an independent ground for denying his motion to withdraw his plea, which he made seven years after he fleed and then was apprehended and extradited. Do you agree that we review that judgment on abuse of discretion standard? I do, and it is part of what I alluded to in the very outset of my argument that he has a heavy burden. What makes it an abuse of discretion for the district court on this record to have relied on that ground? Well, what I would say is the factors that underlie the fugitive disentitlement doctrine, I would say, are basically equitable and good equitable considerations. Number one, somebody who flees from justice, the factor that there is a penalty there, that's one. Then the second is, a main one, is what effect might it have on the government and prejudice. And the government here has alluded to significant prejudice, they claim, that would happen because of such inability to locate witnesses. A lapse of seven years in between the drug conspiracy and his trial. Yes. So what I would say, and it's a heavy burden, but in making the argument for him that there are countervailing factors to ask the court to weigh here, of those factors for the government but factors of his illiteracy. Of course, on abuse of discretion review, we need to find an error of law or clearly erroneous factual findings and so on. We typically don't rebalance equitable factors, isn't that correct? Well, here, and I made arguments and make arguments in the brief about the effect of his illiteracy and extremely low level of education on his ability to comprehend and that the court did not go far enough, I submit, in ascertaining whether he had that understanding. Now that understanding then also does have a bearing, I submit, on the Fugitive Disentitlement Doctrine and that is his statement in his motion that he panicked. And the things that he said indicating, and he said he was illiterate, he lacked understanding, that those are, I would say, things where, in this instance, the contention is that the doctrine would not apply. Thank you, Mr. Chairman. Thank you. Good morning. May it please the Court. My name is Sylvia Schwader, and I represent the United States of America in this appeal brought by Desmond Campbell. As the judge pointed out, as Your Honor pointed out, the Fugitive Disentitlement Doctrine, I believe, trumps all the other aspects of this matter because that was an independent ground on which the judge could rule and which he did rule properly. But it is an independent. We can do it without reaching that question, right? Yes, Your Honor. In your view. Yes, Your Honor. Also, just to address a point made by opposing counsel. The defendant, while he claimed, while the government believed that he may be illiterate, that's not, first of all, a foregone conclusion. That was just an understanding that he may be illiterate. And in my pointing it out to the court, the district court made every possible adjustment in how she could proceed with the allocution to make sure that he did understand what was happening. And I think that she was very careful. With respect to one of the Rule 11 errors that counsel alleges, that's the failure to advise the defendant that he could proceed at all stages of the proceeding with appointed counsel rather than paid counsel. That does seem to be intertwined with some elements of the stated basis for his motion to withdraw his plea. And the district court rejected the contention that there was any error or that it had any effect, her failure to advise him of that because his brother was proceeding with appointed counsel and had been indicted at the same time. But would you concede that it was error for the district court not to so advise? In accidentally not mentioning that as part of the allocution, that was something that should have been raised. And I do concede that it was error. But it was harmless, especially here because, as Your Honor pointed out first, that the co-defendant brother whom he was proceeding at every stage of this with was with appointed counsel and also the agent had raised with him right after his arrest that he could have appointed counsel. So he had heard several times that he could have appointed counsel. And when he was being allocated as to whether he was satisfied with his counsel, that would have been a perfect opportunity. But, of course, Rule 11 requires that the court personally advise the defendant of certain things. And we can do harmless error analysis, obviously. So the district court is making a factual finding that he already knew, and that's part of our harmless error analysis. Is that right? Yes, Your Honor. Thank you. If there are no other... Thank you. Thank you, Your Honor. We'll hear from Mr. Brine, who's reserved some time, although he got a little extra time before. Thanks very much, Mr. Brine. We reserve the decision.